NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-527

COMMONWEALTH

<u>vs</u>.

STEPHEN D. BOULTER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant was convicted of two counts of rape, in violation of G. L. c. 265, § 22 (<u>b</u>); one count of intimidation of a witness, in violation of G. L. c. 268, § 13B; and one count of photographing or video recording an unsuspecting nude person, in violation of G. L. c. 272, § 105 (<u>b</u>).  On appeal, the defendant challenges the propriety of the prosecutor's opening statement and closing argument.  We affirm.

Background.  The defendant and the victim were in a romantic relationship for slightly more than a year.  On January 4, 2022, they got together at the defendant's friend's apartment, where the defendant was staying.  At this point in

their relationship, the victim wanted to break up with the defendant.  While the defendant was working, the victim fell asleep on the defendant's bed.  The victim woke up when the defendant attacked her in her sleep.  She suffered a black eye as a result of the attack.  A photograph of the victim's injury was entered into evidence.  The victim posted the same photograph of herself on her Facebook profile.  A few days later, the victim reported this incident (the Attleboro case) to the Attleboro police department.  The defendant was later arrested.

The defendant spoke to the victim about this Attleboro case while it was pending.  He told her "[n]ot to answer anybody in the court.  So do not talk to the [district attorney] or do not talk to anybody in court.  Don't show up."  He expressed concern that he would "be in big trouble for it."[1]

Despite the assault, the victim remained in contact with the defendant because she still loved him.  She saw the defendant again on January 13, 2022.  They agreed to go to a hotel that evening.

The victim picked up the defendant that evening, and they stopped at a liquor store.  The victim purchased a sleeve of

---

[1] Indeed, the defendant was eventually held in jail in connection with the Attleboro case.

2

Fireball shots and a six pack of Bud Light. They arrived at the hotel after 9 or 10 P.M. The victim quickly drank two Fireball shots and two beers. The defendant was also drinking. The victim could not remember the rest of the evening. Her next memory was waking up the following morning and consenting to sexual intercourse with the defendant.

The victim gave the defendant a ride to his friend's house. As they parted ways, the defendant said, "[W]e made some awesome videos last night." The victim did not understand what the defendant was talking about and asked him what he meant. The defendant just brushed off her question.

Approximately two days later, the defendant sent the victim two video recordings of the victim nude in the hotel bathtub. The video recordings depicted the defendant repeatedly penetrating the victim's vagina with multiple fingers, even after she repeatedly asked him to stop. On direct examination, the victim testified that she had no memory of being in that bathtub. She described herself in the video recordings as "not coherent."

The defendant also sent the victim a series of five nude photographs of the victim in the hotel bathroom. On cross-examination, the victim explained that she would normally not

3

let the defendant photograph her in the nude because she was uncomfortable with her body.[2]

The victim tried to break up with the defendant after the hotel stay. In response, the defendant told the victim that he would send the nude photographs and video recordings to her boss, her parents, and her children. The defendant also threatened to send the video recordings and images to the Department of Children and Families (DCF). Despite this threat, the victim ended the relationship. She then reported the hotel assault to the police.

After this point, the defendant began calling the victim from the house of correction, where he was held because of the Attleboro case. They spoke almost daily for more than two months. In one recorded call, played for the jury, the defendant told the victim that he would arrange for a private investigator to visit the victim, and the investigator would record her stating that she consented to the sexual activity in the bathtub and to being video recorded in the nude while at the hotel. The victim later told a private investigator that all these acts were consensual. She testified that she did this

---

[2] The defense impeached this claim with a recorded jail call in which the victim offered to send the defendant photographs of herself naked. The victim then admitted that she sent the defendant photographs of herself wearing lingerie and underwear.

4

because she "felt threatened, manipulated, [and] made to feel guilty."

The defendant sent a letter to the victim's children's father. The letter accused the victim of lying, suggested that she disappear, and stated that if she came forward, the defendant would deal with her after the fact.

In a text exchange, the defendant's former girlfriend sent the defendant a photograph of the victim with a black eye and asked him why he had done that. The defendant responded, "I'll take care of that bitch. Watch." Also, in a recorded jail call to this former girlfriend, the defendant admitted to the underlying facts that constituted rape, that he had recorded the victim, and that the victim had been so drunk that she could not remember what had happened.

Discussion. On appeal, the defendant argues that the prosecutor made errors in her opening statement and closing argument that require reversal and a new trial. We address each argument in turn.

1. The prosecutor's opening statement. The defendant argues that the prosecutor made improper speculative and emotionally provocative arguments designed to appeal to the jurors' sympathies in her opening statement. "The proper function of an opening [statement] is to outline in a general way the nature of the case which counsel expects to be able to

5

prove or support by the evidence" (citation omitted). Commonwealth v. Croken, 432 Mass. 266, 268 (2000). "A mistrial may be appropriate where the force of the prosecutor's opening remarks was overwhelmingly prejudicial and likely to leave an indelible imprint on the jurors' minds" (quotation and citation omitted). Commonwealth v. Hoilett, 430 Mass. 369, 372 (1999). "[A] claim of improper [opening statement] by the prosecutor must be judged in light of the entire [statement], the judge's instructions to the jury, and the evidence actually introduced at trial" (citation omitted). Commonwealth v. Jones, 439 Mass. 249, 260-261 (2003). Because defense counsel did not object to the Commonwealth's opening statement, we determine whether there was any error, and if so, whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Randolph, 438 Mass. 290, 297 (2002). "A substantial risk of a miscarriage of justice exists when we have a serious doubt whether the result of the trial might have been different had the error not been made" (quotation and citation omitted). Id.

First, the defendant takes issue with the prosecutor's expectation that the evidence would demonstrate that the defendant had a plan to control, manipulate, and keep the victim from talking about the Attleboro case. The defendant asserts that this was improper speculation.

In an opening statement, a prosecutor may suggest that the evidence will demonstrate anything that the Commonwealth reasonably and in good faith expects to prove.  Jones, 439 Mass. at 260.  See Commonwealth v. Snow, 34 Mass. App. Ct. 27, 34 (1993).

In fact, the evidence at trial amply supported the prosecutor's expectations.  The Commonwealth introduced evidence concerning the Attleboro case, including the fact that the victim reported it to the police, that the defendant was aware of this, and that he told her "[n]ot to answer anybody in the court.  So do not talk to the [district attorney] or do not talk to anybody in court.  Don't show up."

Then, on the night the defendant assaulted the victim in the hotel bathtub, the defendant took several photographs of the victim and recorded a series of video recordings including the series in which he sexually assaulted her.  The defendant then threatened to send the photographs and video recordings to the victim's boss, her parents, her children, and DCF if she pursued criminal charges.  The defendant also repeatedly told the victim to keep her promise to not testify against him.

The prosecutor was free to articulate the defendant's underlying motive where it was supported by the evidence at trial.  "Evidence of motive is generally admissible" (quotation

and citation omitted).  Commonwealth v. Mendes, 441 Mass. 459, 464 (2004).

The defendant also asserts that the prosecutor improperly appealed to the jurors' sympathies.  Specifically, the defendant points to the prosecutor's statement that the victim "was too drunk to consent to what was happening to her, which is this defendant shoving his hand into her vagina, treating her like a rag doll that night, treating her like his plaything . . . treating her like she was nothing . . . ."

"A prosecutor may use the opening [statement] to set the scene, . . . even if that scene is unfavorable to the defendant."  Commonwealth v. Alemany, 488 Mass. 499, 511 (2021). At the same time, the prosecutor "must avoid slip[ping] into emotionally provocative argument" or "making an improper appeal to sympathy to ensure that the verdict [is] based on the evidence rather than sympathy for the victim" (quotations and citation omitted).  Commonwealth v. Kapaia, 490 Mass. 787, 794-795 (2022).  Furthermore, a prosecutor cannot "inflame the jury to evoke an emotional, rather than intellectual response" (citation omitted).  Commonwealth v. Phillips, 495 Mass. 491, 498 (2025).

Here, the highlighted language in the prosecutor's opening statements accurately described the evidence in the three video recordings submitted into evidence as Exhibits 4, 5, and 6.  The

8

video recordings, which the defendant recorded and sent to the victim, depicted the defendant slapping and raping a semiconscious, intoxicated, and incoherent victim while verbally abusing her, and using crude language to embarrass and belittle her.  Specifically, he repeatedly claimed ownership of the victim's body as he assaulted her.  He continued to do all of this even after the victim repeatedly asked him to stop, ignoring her pleas.  "[T]o the degree the recitation of the evidence was inflammatory, that was inherent in the odious . . . nature of the crime[] committed" (citation omitted).[3] Commonwealth v. Johnson, 429 Mass. 745, 749 (1999).

Finally, in order to prevent a rush to judgment, the judge properly instructed the jury before the opening statements that they were not evidence.  The judge repeated this instruction in the final jury charge.  Compare Commonwealth v. Barbosa, 477 Mass. 658, 670 (2017) (prosecutor's emphatic rhetoric in opening statement and closing argument was permissible because it was

---

[3] Alternatively, to the extent that the prosecutor's assertion that the defendant treated the victim like a "rag doll" and "plaything" may be considered an improper appeal to juror sympathy, it did not create a substantial risk of a miscarriage of justice given the overwhelming evidence of the defendant's guilt.  See Commonwealth v. Santiago, 425 Mass. 491, 501 (1997) ("the strength of the Commonwealth's case is particularly crucial where improper appeals to sympathy are made.  Where guilt is clear, we may conclude that the overwhelming strength of the evidence led the jury to its conclusion").

accompanied by jury instruction before opening statements and in final charge that opening statements and closing arguments are not evidence).  There was no error.

2.  The prosecutor's closing argument.  The defendant contends that during the prosecutor's closing argument, the prosecutor expressed her personal opinion of the evidence, referred to facts not in evidence, and impermissibly vouched for the credibility of the victim.  The defendant made a timely objection to the prosecutor's alleged vouching.  We conclude that there was no error.

First, the defendant claims that "the [p]rosecutor expressed her personal opinion of the evidence."  The defendant points to the following portion of the prosecutor's argument:

> "And when you listen to that, those videos that I talked about outside of Muckey's [Liquor Store], at the hotel, you can hear that in the defendant's voice.  He knows what he's doing when he's getting her into that hotel room. . . .  When you look at these pictures, ask yourself, is this a person who's consenting . . . and had an agreement before?  No.  Absolutely not. . . .  There was a man manipulating a woman who he knew how to take control of.  And he knew she was drunk. . . ."

There was no objection.  On appeal, the defendant asserts that in this passage the prosecutor improperly opined that the defendant had filmed the victim at a liquor store as part of a plan to control her and that the victim had not consented to being photographed.

10

"It is well established that [a] prosecutor may not assert his or her personal opinion as to the credibility of a witness or the guilt of an accused" (quotation and citation omitted). Commonwealth v. Kosilek, 423 Mass. 449, 459 (1996). Furthermore, a prosecutor may not "suggest that [she] has knowledge independent of the evidence at trial." Commonwealth v. Sanders, 451 Mass. 290, 297 (2008). "A prosecutor may, however, in closing argument, analyze the evidence and suggest what reasonable inferences the jury should draw from that evidence. The inference need not be necessary and inescapable, only reasonable and possible" (quotations and citations omitted). Commonwealth v. Goddard, 476 Mass. 443, 449 (2017).

While it may have been risky for the prosecutor to assert that the defendant "[knew] what he was doing when he was getting the [the victim] into that hotel room," this argument was permissible because it "found ample support in the evidence" (citation omitted). Commonwealth v. McCaffrey, 104 Mass. App. Ct. 642, 658 (2024). As noted above, the defendant filmed and photographed the victim while she was intoxicated and incoherent in the hotel bathtub and then threatened to share the video recordings and photographs with her boss, family, and DCF if she pursued criminal charges against him.

Likewise, the prosecutor's assertion that the victim was "[a]bsolutely not" consenting was supported by the video

11

recordings, which established that she repeatedly pleaded with the defendant to stop digitally penetrating her vagina, and the jail calls with the defendant's ex-girlfriend in which he admitted that he knew the victim was drunk. There was no error.

Second, the defendant argues that the prosecutor improperly referred to facts not in evidence when she addressed the defendant's impeachment of the victim's testimony that she would never allow the defendant to photograph her nude because she was uncomfortable with her body. On cross-examination of the victim, the defendant played recorded jail calls in which the victim offered to send the defendant nude photographs of herself. The victim also admitted that she actually did send the defendant photographs of herself in her underwear. The prosecutor argued:

> "And those calls that you heard while she was on cross-examination about taking those pictures, you listen close enough and common sense and life experience will tell you she was drinking during those calls. And clearly, [the victim] has an issue with alcohol, but that is not something that you should be holding against her."

Again, there was no objection.

"[C]losing arguments must be limited to facts in evidence and the fair inferences that may be drawn from those facts." Commonwealth v. Rutherford, 476 Mass. 639, 643 (2017). See Commonwealth v. Niemic, 483 Mass. 571, 592 (2019) ("a prosecutor may not argue facts not in evidence or misstate the evidence").

12

"It is well established that it is proper to ask a jury to rely on their common sense and life experience in assessing evidence and credibility." Commonwealth v. Salazar, 481 Mass. 105, 117 (2018).

The prosecutor was permitted to ask the jury to use their "common sense and life experience" to determine if the victim was intoxicated during the calls, and by inference, how this might have affected her decision to send photographs to the defendant. This was especially reasonable, given the extensive testimony about the victim's alcohol consumption when she was with the defendant. There was no error.

Finally, the defendant argued that the prosecutor improperly vouched for the credibility of the victim. The prosecutor argued:

> "You had an opportunity to see [the victim] here. And as the [j]udge explained to you about assessing the credibility of the witnesses, think about how she was when she went and she talked about those videos. When she had to go and show you her naked body in that bathtub . . . ."

Defense counsel made a timely objection that this was improper vouching for the victim's credibility.

"A prosecutor engages in improper vouching if he or she expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury" (quotation and citation omitted). Commonwealth v. Martinez, 476 Mass. 186, 199 (2017). But again,

13

a prosecutor may urge the jury to draw reasonable inferences from the evidence.  Goddard, 476 Mass. at 449.  More specifically, a prosecutor may "state logical reasons based on inferences from the evidence why a witness's testimony should be believed."  Martinez, supra at 199.

On the other hand, "a prosecutor may not argue that a victim is credible simply because she appeared to testify in court."  Commonwealth v. Polk, 462 Mass. 23, 39 (2012).  But "[w]here . . . defense counsel in his closing argument challenged the credibility of the alleged victim, a prosecutor acts properly in inviting the jury to consider whether the victim has a motive to lie, and identifying evidence that demonstrates that the victim's testimony is accurate and reliable."  Id. at 39-40.

Here, the defense placed the victim's credibility at the heart of his defense and his closing argument.  In response, the prosecutor did not assert that the victim was credible at all, much less "because she appeared to testify in court."  Polk, 462 Mass. at 39.  Rather, the prosecutor properly asked the jury to

consider the victim's demeanor in assessing her credibility.[4]

Id.  There was no error.[5]

Judgments affirmed.

By the Court (Sacks, Smyth &
   Wood, JJ.[6]),

*Paul Little*

Clerk

Entered:  November 14, 2025.

---

[4] For example, the prosecutor asked the jury to consider the victim's demeanor "when she went and she talked about these videos."

[5] Furthermore, any potential improper vouching would not constitute prejudicial error in this case, considering the overwhelming evidence of the defendant's guilt.

[6] The panelists are listed in order of seniority.