## COMMONWEALTH vs. JOHN PARENT.

Middlesex. February 4, 2013. - June 10, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Indecent Assault and Battery. Delinquent Child. Evidence,* Prior inconsistent statement, First complaint, Bias, Relevancy and materiality, Presumptions and burden of proof. *Rape-Shield Statute. Practice, Criminal,* Assistance of counsel, Argument by counsel, Presumptions and burden of proof, Instructions to jury, Question by jury. *Constitutional Law,* Assistance of counsel, Burden of proof. *Alcoholic Liquors.*

At the trial of an indictment charging indecent assault and battery on a child over the age of fourteen, in violation of G. L. c. 265, § 13H, the judge erred in limiting defense counsel's ability to impeach the credibility of the victim by eliciting from a police officer on cross-examination the victim's earlier statements regarding the alleged assault and her first complaint that were inconsistent with the victim's testimony at trial; further, such error was prejudicial and required a new trial, where the victim's credibility was the sole issue at trial, and where the inconsistent statements the jury did not hear reasonably may have affected their evaluation of her credibility. [398-402]

Discussion of issues that may arise at the retrial of an indictment charging indecent assault and battery on a child over the age of fourteen, in violation of G. L. c. 265, § 13H, concerning the admission in evidence of multiple first complaint testimony [402-404] and alleged evidence of bias consisting of testimony regarding an alleged specific instance of the victim's sexual conduct [404-406].

There was no merit to a criminal defendant's argument that his trial counsel was ineffective, where, viewing his opening statement and closing argument in their entirety, there was no danger that his offer to "prove" facts was misunderstood by the jury as accepting a burden of proof; and where any confusion as to who bore the burden of proof would have been cured by the judge's instructions. [406-407]

This court concluded that a parent does not violate G. L. c. 138, § 34, by giving his or her own child alcohol in his own home, regardless of whether that act is characterized as furnishing or delivering. [407-410]

INDICTMENTS found and returned in the Superior Court Department on May 26, 2009.

The cases were tried before *Elizabeth M. Fahey,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael Tumposky* for the defendant.

*Anne Pogue Donohue*, Assistant District Attorney, for the Commonwealth.

GANTS, J. A Superior Court jury convicted the defendant, John Parent, on three indictments: the first alleged indecent assault and battery on a fourteen year old friend of his daughter (victim) in violation of G. L. c. 265, § 13H; and the latter two alleged that he contributed to the delinquency of a child, in violation of G. L. c. 119, § 63. The second indictment rested solely on the theory that the defendant violated G. L. c. 138, § 34, by delivering, procuring, and furnishing alcohol to the victim; and the third rested solely on the defendant's delivery of alcohol to his own fifteen year old daughter. On appeal, the defendant claims that the trial judge erred by (1) barring defense counsel from eliciting from a police detective certain statements made by the victim in an interview conducted four days after the indecent assault and battery that were inconsistent with the victim's trial testimony; (2) allowing "second complaint" testimony to be admitted at trial; (3) limiting inquiry into matters that the defendant contends would have revealed a motive for the victim to fabricate her allegations; and (4) denying the defendant's motion for a required finding of not guilty on the indictment alleging that he had delivered alcohol to his own daughter. The defendant also argues that his counsel was ineffective because he declared in his opening statement that he would prove certain facts and asserted in his closing argument that he had proved those facts, thereby suggesting that the defendant had accepted some burden of proof.

We conclude that the judge erred in preventing the jury from learning that the victim made statements to a police detective regarding the alleged sexual assault and her first complaint that were inconsistent with the victim's testimony at trial. Where the Commonwealth's case regarding the sexual assault rested entirely on the victim's credibility, we conclude that such an error is prejudicial and requires a new trial as to that indictment. We also conclude that the defendant's conviction resting on his delivery of alcohol to his daughter must be reversed and a judgment of acquittal entered, because the Legislature did not intend G. L. c. 138, § 34, to prohibit the delivery of alcohol by a parent

to his or her minor children. We affirm the conviction of furnish-
ing, procuring, and delivering alcohol to the victim, because we
conclude that the defendant was not denied the effective as-
sistance of counsel.[1]

*Background.* We recite the facts a jury could have found,
reserving additional facts for the discussion of specific issues
raised on appeal. The defendant's fifteen year old daughter,
Sally, invited her fourteen year old friend Maxine,[2] the victim,
to sleep over at her father's house.[3] On March 21, 2008, Max-
ine arrived at the defendant's home with a water bottle contain-
ing vodka that she had taken from her parents' liquor cabinet.

Sally asked her father for a bottle of "hard lemonade," an
alcoholic, lemon-flavored malt beverage, and the defendant
gave a bottle to each of the girls. After the girls had each con-
sumed the hard lemonade, the defendant asked them if they
wanted to go with him to a local convenience store to purchase
more alcohol. At the convenience store, the defendant bought
two six-packs of hard lemonade. The store clerk testified that
the defendant came into the store with two girls and that the
defendant introduced one of the girls as his daughter. After
purchasing the alcohol, the defendant and the two girls returned
to the defendant's home, and the defendant then gave the girls
one of the six-packs of the hard lemonade. The girls took the
six-pack to a bedroom located in the refinished basement of the
defendant's house,[4] and each consumed three bottles. After
finishing the third bottle at approximately 10:30 or 11 P.M.,
Maxine testified that she felt "tipsy."

Maxine also testified that the defendant appeared "tipsy"
when he spoke to them from the doorway of Sally's bedroom
about twenty minutes after they had gone down to the basement.
The girls spoke with friends on their cellular telephones until
after midnight, at which point the defendant and his fiancée[5]

---

[1]The defendant does not appear to challenge this conviction, but he does
contend that he was denied the effective assistance of counsel, so we address
only that argument.

[2]We use pseudonyms for both girls.

[3]The defendant was divorced from Sally's mother and lived with his fiancée,
whom he married before trial.

[4]The room contained a sofa bed, and a television that sat on an adjacent desk.

[5]See note 3, *supra.*

came down to the bedroom and told the girls to go to bed. The defendant's fiancée confiscated the girls' cellular telephones, but the girls were allowed to keep the telephones' batteries. The girls then both fell asleep on a sofa bed while watching television.

Maxine testified that she awoke suddenly to find the defendant on the sofa bed, between her and Sally, saying her name, although mispronouncing it. According to her testimony, she felt the defendant's hand under her pajama pants rubbing her vagina over her underwear. Maxine pulled the defendant's hand out of her pajamas and pulled the covers up. After the defendant tugged at the covers and called Maxine a "party pooper," he turned off the television and went back upstairs. Maxine then fell back to sleep.

The following morning, after Sally and Maxine woke up and recovered their cellular telephones, the defendant's fiancée took Sally, Maxine, and Sally's younger sister to a shopping mall to see a movie. While at the mall, Maxine saw a friend, Annette,[6] who testified that Maxine told her that the defendant had lain on the bed with them while "they were trying to sleep" and "his hand [had been] in [Maxine's] pants."[7]

Sally testified that her father gave her and Maxine each a bottle of hard lemonade before going to the store, and that he purchased three six-packs of hard lemonade at the store and gave them two of the six-packs.[8] She observed that her father was "getting more and more intoxicated" throughout the night. Sally further testified that she did not see, hear, or feel her father get on the sofa bed, even though she was sleeping only eighteen inches away from Maxine in the sofa bed.

*Discussion.* 1. *Impeachment by prior inconsistent statement.* The only evidence of the indecent touching derived from Maxine, and was presented to the jury through Maxine's testimony and the first complaint testimony of Annette. Defense counsel argued that Maxine was not credible and that the alleged sexual assault was a fabrication. In his opening statement, defense counsel told

[6]Also a pseudonym.

[7]Maxine testified that she told Annette at the mall that the defendant had "touched" her the previous night but she did not want Annette to tell anyone.

[8]The store receipt reflected the purchase of only two six-packs of hard lemonade.

the jury that they would learn that the details surrounding Maxine's story changed over time, and he specifically referred to Maxine's interview with Detective Scott Chaulk as the source of some of those inconsistencies.

According to Detective Chaulk's incident report, Maxine told him on March 26, 2008, four days after the events at issue, of the sexual assault committed against her by the defendant. However, some of the information she provided to Detective Chaulk differed from what she said in her trial testimony. She told Detective Chaulk that, when the defendant lay down between Sally and her, Sally told him to leave them alone, but at trial she testified that she did not hear Sally say anything. She told Detective Chaulk that the defendant touched, but did not penetrate, her vagina, but at trial she testified that he rubbed her vagina over her underwear, and specifically denied telling Detective Chaulk that the defendant had touched her vagina. She told Detective Chaulk that she told someone about the incident on the following Monday at cheerleading practice, but at trial she testified that she told Annette on Saturday at the mall.

In his cross-examination of Maxine, defense counsel attempted to elicit these inconsistencies from her, but Maxine either denied making the inconsistent statements to Detective Chaulk or claimed that she did not remember making them, even after defense counsel attempted to refresh her memory with Detective Chaulk's report. When Detective Chaulk testified, defense counsel on cross-examination attempted to elicit Maxine's inconsistent statements from him. The judge sustained the prosecutor's objection to this line of questioning, ruling that the statements Maxine made to Detective Chaulk were not inconsistent because she did not remember making them. We review this evidentiary ruling for prejudicial error. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 160 (1982).

The defendant argues on appeal that the judge erred by limiting his ability to impeach Maxine's credibility by eliciting from Detective Chaulk her earlier inconsistent statements. We agree. "The rule of evidence is well settled that if a witness either upon his direct or cross-examination testifies to a fact which is relevant to the issue on trial the adverse party, for the purpose of impeaching his testimony, may show that the witness has

made previous inconsistent or conflicting statements, either by eliciting such statements upon cross-examination of the witness himself, or proving them by other witnesses." *Robinson* v. *Old Colony St. Ry.*, 189 Mass. 594, 596 (1905). See *Commonwealth* v. *Basch*, 386 Mass. 620, 623 (1982) ("A party has a right to impeach [a] witness's testimony by means of prior inconsistent statements, and though a judge may limit that impeachment when the testimony concerns collateral issues in the case, [the judge] has no discretion to do so when the issue is material"). See generally Mass. G. Evid. § 613(a) & note (2013) (extrinsic evidence of prior inconsistent statement by witness called by adverse party admissible for impeachment purposes). To be used for impeachment, it is not necessary that the witness's "prior statement be a complete, categorical, or explicit contradiction of his trial testimony." M.S. Brodin & M. Avery, Massachusetts Evidence § 6.13.2(b), at 321 (8th ed. 2007). See *Commonwealth* v. *Simmonds*, 386 Mass. 234, 242 (1982) ("It is not necessary that the prior statement contradict in plain terms the testimony of the witness"). "It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict." *Commonwealth* v. *Hesketh, supra* at 161, quoting *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942). See *Commonwealth* v. *Pickles*, 364 Mass. 395, 402 (1973) (prior statement inconsistent "if its implications tend in a different direction").

The Commonwealth contends, in essence, that Maxine's statements to Detective Chaulk were not inconsistent because "there is no inconsistency between a present failure of memory on the witness stand and a past existence of a memory." *Commonwealth* v. *Martin*, 417 Mass. 187, 197 (1994), quoting P.J. Liacos, Massachusetts Evidence § 6.6.2, at 271-272 (6th ed. 1994). In *Commonwealth* v. *Martin, supra* at 196, the alleged rape victim could not recall at trial what her assailant wore at the time of the alleged crime, but she had earlier testified that the assailant had worn jeans. We concluded that the "complainant's lack of memory at trial is not inconsistent with her prior testimony." *Id.* at 197. But, in this case, Maxine at trial *did* recall what hap-

pened to her during the sleepover and its aftermath, and, according to Detective Chaulk's incident report, her earlier statements to Detective Chaulk *were* materially inconsistent with some of her trial testimony. The defendant did not contend that Maxine's lack of memory at trial as to what she told Detective Chaulk was inconsistent with what she told Detective Chaulk. Rather, he contended that what she told the jury as to what happened during the alleged sexual assault and when she first spoke of it to a friend was in part inconsistent with what she told Detective Chaulk. "[A] witness who has actually made a statement contradictory to trial testimony cannot escape impeachment simply by saying [s]he does not remember making the statement." M.S. Brodin & M. Avery, Massachusetts Evidence, *supra* at § 6.13.2(b), at 322, citing *Langan* v. *Pianowski*, 307 Mass. 149, 152 (1940). See *Commonwealth* v. *Daye*, 393 Mass. 55, 73 n.17 (1984), overruled on another ground, *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 432 n.3 (2005) ("Although the witness must recall the underlying events to which a prior statement refers, the witness need not recall making the statement, provided there is evidence, such as a grand jury transcript, that the statement was made").

The Commonwealth additionally contends that the inconsistencies the defendant sought to elicit — the nature of the sexual touching, whether Sally spoke during the assault, and the date and place that Maxine told Annette about the alleged assault — were collateral matters that the judge may exclude in her discretion. See Mass. G. Evid. § 613(a)(4) (2013) ("Extrinsic evidence to impeach a witness on a collateral matter is not admissible as of right, but only in the exercise of sound discretion by the trial judge"). The Commonwealth's argument misses the mark. Because the crux of the defense was that Maxine had fabricated the entire story of the sexual assault, evidence that her description changed from one telling to the next is probative of whether her story is true and whether it deserves to be credited beyond a reasonable doubt. Inconsistencies in her reporting of the sexual assault and her first complaint just four days after these events occurred are not collateral matters that a judge has discretion to preclude.

We turn now to the issue of prejudice. The only evidence of

a sexual assault derived from Maxine, both through her testimony at trial and through her first complaint, so her credibility was the sole issue at trial as to that charge. Defense counsel argued that it was improbable both that the defendant would attempt to initiate sexual relations with Maxine while she slept only inches away from his own daughter, and that his daughter would not see, hear, or feel him sitting on the sofa bed if he had done so.[9] Because a finding of guilt as to the sexual assault required the jury to find beyond a reasonable doubt that Maxine was credible in her allegation, and because the inconsistent statements the jury did not hear reasonably may have affected their evaluation of her credibility, we "cannot say with fair assurance" that "the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), quoting *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). Therefore, we vacate the defendant's conviction of indecent assault and battery, and remand for a new trial.

2. *Alleged evidentiary errors.* Because we vacate the defendant's conviction of indecent assault and battery and remand for a new trial on this charge, we briefly address the remaining evidentiary issues that may arise at a retrial.

a. *"The general nature of the report" of Maxine to Detective Chaulk.* After Annette testified to Maxine's first complaint, the prosecutor asked Detective Chaulk to describe the "nature" of the subsequent report that Maxine made to him. Detective Chaulk responded that Maxine told him that "something had occurred" while she was on a sleepover at her friend's father's house the previous Friday evening. Defense counsel objected, and the judge sustained the objection and called counsel to sidebar, where she told the prosecutor, "[Y]ou don't get to ask him fresh complaint." The prosecutor replied that she was entitled to ask about "the general nature of the report" because defense counsel had extensively questioned the victim about her statement to Detective Chaulk, and the prosecutor was offering a "consistent report" to offset the inconsistent statements that defense counsel had elicited. Defense counsel said he had no objection, and the prosecutor elicited from Detective Chaulk

---

[9]Sally agreed that the sofa bed was "a full or double bed."

testimony that Maxine had told him that the defendant had committed a sexual assault on her when she was at the defendant's house.

Under the "first complaint" doctrine, we do not permit in evidence "testimony from multiple complaint witnesses, limiting the testimony to that of one witness — the first person told of the assault. The testimony of multiple complaint witnesses likely serves no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime." *Commonwealth* v. *King*, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006), and cases cited. "Law enforcement officials, as well as investigatory, medical, or social work professionals, may testify to the complaint only where they are in fact the first to have heard of the assault, and not where they have been told of the alleged crime after previous complaints or after an official report." *Id.* The testimony elicited, for all practical purposes, constituted a second complaint from Maxine that the defendant had sexually assaulted her.

Nor was Maxine's report to Detective Chaulk independently admissible to rebut the defense of fabrication or to rehabilitate Maxine's credibility. We have previously held that if evidence of a subsequent complaint is independently admissible and "serve[s] a purpose separate and apart from the first complaint doctrine, the judge may admit it 'after careful balancing of the testimony's probative and prejudicial value.' " *Commonwealth* v. *Dargon*, 457 Mass. 387, 400 (2010), quoting *Commonwealth* v. *Arana*, 453 Mass. 214, 229 (2009) (*Arana*). However, in the *Dargon* case, we specifically noted that "[i]f independently admissible evidence, 'other than that specifically and properly designated as first complaint testimony, serves no purpose other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations, it is inadmissible.' " *Commonwealth* v. *Dargon*, *supra* at 399-400, quoting *Arana*, *supra*. See *Arana*, *supra* (testimony may be admitted if "relevant and admissible for reasons that are independent of the first complaint doctrine"). The testimony elicited from Detective Chaulk did not specifically rebut the defendant's theories of bias or

404                                        465 Mass. 395 (2013)

fabrication, but served only to show that Maxine had repeated her complaint to the police after initially telling Annette. If a claim of fabrication alone were sufficient to open the door to the admission of multiple complaints, there would be nothing left of our "first complaint" doctrine.

b. *Alleged evidence of bias.* The defendant wished to elicit testimony from his fiancée that, on the night of the incident, before the alleged indecent assault and battery occurred, she overheard Maxine say to someone on her cellular telephone that she would provide oral sex if he came over to the defendant's house that night.[10] The defendant claimed this evidence was admissible because Maxine may have feared that the defendant or his fiancée would report the telephone call to her parents and may have fabricated the allegations against the defendant as a sort of "preemptive strike." The judge ruled that the defendant may elicit that Maxine was overheard "inviting a boy over," but not that she promised him oral sex once he arrived. The judge declared that the offer of oral sex was inadmissible under the rape shield statute, G. L. c. 233, § 21B (§ 21B), which provides in pertinent part, "Evidence of specific instances of a victim's sexual conduct . . . shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim . . . ."

The term "sexual conduct" is not defined in § 21B, and we have yet to address whether an offer of sex constitutes "sexual conduct" under the statute.[11] We need not address it here, because we conclude that, regardless whether an offer of sex is governed

---

[10]Maxine admitted that she was talking to boys on her telephone, but denied that she invited anyone over.

[11]At least two appellate courts in other States have interpreted "sexual conduct" under those States' rape shield statutes to include offers of sex in return for money or things of value. See *People* v. *Casas*, 181 Cal. App. 3d 889, 895, cert. denied, 479 U.S. 1010 (1986) (refusing to "construe 'sexual conduct' as meaning only acts of sexual intercourse" and holding that victim's "statement that she offered to have sexual intercourse with [a third party] for money" was "sexual conduct" within scope of California's rape shield statute); *Shand* v. *State*, 341 Md. 661, 680 (1996) ("an oral, unconsummated offer, by the victim, to trade sex for drugs . . . is 'sexual conduct,' and the admissibility of evidence of a specific instance of such sexual conduct should be analyzed

by the rape shield statute, the judge did not abuse her discretion in limiting this evidence.

Section 21B is "principally designed to prevent defense counsel from eliciting evidence of the victim's promiscuity as part of a general credibility attack." *Commonwealth* v. *Pearce*, 427 Mass. 642, 647 (1998), quoting *Commonwealth* v. *Fitzgerald*, 412 Mass. 516, 523 (1992). Further, even where § 21B does not apply, our common law grants a judge discretion to exclude such evidence where its primary purpose is to damage an alleged victim's credibility in the eyes of the jury by suggesting promiscuity, and the risk of unfair prejudice outweighs its probative weight. See *Commonwealth* v. *Domaingue*, 397 Mass. 693, 698 (1986) (judge did not err in excluding evidence of complainant's prior sexual conduct where "proffered evidence was excludable under common law principles of evidence, even though not properly excluded under G. L. c. 233, § 21B"). In contrast, where specific instances of an alleged victim's sexual conduct are relevant to show bias or a motive to lie, the evidence may be admissible even where § 21B governs. See *Commonwealth* v. *Polk*, 462 Mass. 23, 37-38 (2012) ("We have recognized . . . that where the rape shield statute is in conflict with a defendant's constitutional right to present evidence that might lead the jury to find that a Commonwealth witness is lying or otherwise unreliable, the statutory prohibition must give way to the constitutional right"); *Commonwealth* v. *Harris*, 443 Mass. 714, 721 (2005) (defendant may introduce evidence of complainant's past sexual conduct notwithstanding rape shield statute "where that conduct is relevant to the complainant's bias or motive to fabricate"). However, even where such evidence is offered to show bias, "[a] judge must determine whether the weight and relevance of the proffered evidence outweighs its prejudicial effect on a victim." *Commonwealth* v. *Mountry*, 463 Mass. 80, 86 (2012).

A defendant who seeks to admit evidence "in an attempt to demonstrate bias must make a plausible showing that the circumstances existed on which the alleged bias is based." *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 401, cert. denied,

under the facts and circumstances of each case in accordance with the provisions of the [rape shield statute]").

516 U.S. 861 (1995) (affirming exclusion of evidence where "defendant's bias theory was too tenuous to be one that he was entitled to pursue on the record he presented"). Here, there was no plausible inference of bias or a motive to lie arising from Maxine's alleged offer of oral sex. There was no evidence actually suggesting that Maxine feared that the defendant's fiancée would reveal the contested information to her parents, and no reason to infer that any reasonable person, or even a reasonable child, would think that a fabricated allegation of indecent assault and battery against the defendant would deter or prevent the defendant's fiancée from making such a revelation. With so slender a claim of bias, a judge would act within her discretion in concluding that the defendant's primary purpose for offering this testimony is to sully the alleged victim's general credibility by suggesting that she is promiscuous, and that the potential "prejudicial effect on [the] victim" outweighs the probative value of such testimony. *Commonwealth* v. *Mountry, supra* at 86.

3. *Ineffective assistance of counsel.* The defendant argues that his trial counsel was ineffective because, through statements made in his opening statement and closing argument, he impermissibly shifted the burden of proof to the defendant. We disagree.

In defense counsel's opening statement, he said, "[W]e, who have no burden of proof at all, will prove to you" certain specified facts. He went on to suggest that he would "prove" that the allegation that the defendant purchased alcohol for the girls "is simply false," and that "the stories changed over time." In his closing argument, defense counsel began by reminding the jury that the Commonwealth has to prove that the defendant is guilty beyond a reasonable doubt, and that the burden is high to prevent a jury "from making a mistake and convicting an innocent person." He then stated, "I told you we would prove certain things. And I suggest to you we did, mostly through cross-examination."

We "recognize the danger that a defense counsel's offer to 'prove' facts may be misunderstood by a jury as accepting a burden of proof that both our Federal and State Constitutions impose on the Commonwealth," *Commonwealth* v. *Taylor,* 463

Mass. 857, 869 (2012), but, viewing defense counsel's opening statement and closing argument in their entirety, we are confident that this danger did not materialize here. Moreover, if defense counsel's promise to prove certain facts created any confusion as to who bore the burden of proof, the confusion would have been cured by the judge's instructions after closing argument that the burden of proving the defendant's guilt beyond a reasonable doubt rested with the Commonwealth. See *id.* at 870. See also *Commonwealth* v. *Miranda*, 458 Mass. 100, 117 (2010), cert. denied, 132 S. Ct. 548 (2011).

4. *Delivery of alcohol to the defendant's daughter.* General Laws c. 138, § 34 (§ 34), makes it illegal to provide alcohol to a person under twenty-one years of age, on any one of three separate theories of liability: (1) the sale or delivery of any alcoholic beverage to any person under twenty-one years of age for his own use or the use of a parent or other person ("delivering"); (2) procurement of an alcoholic beverage for a person under twenty-one years of age in an establishment licensed to sell alcohol ("procuring"); and (3) furnishment of an alcoholic beverage to a person under twenty-one years of age ("furnishing"). Section 34 defines the word "furnish" to mean "to knowingly or intentionally supply, give, or provide to or allow a person under twenty-one years of age except for the children and grandchildren of the person being charged to possess alcoholic beverages on premises or property owned or controlled by the person charged." *Id.* By this definition of the word "furnish," § 34 does not impose criminal liability on a parent who gives alcohol to his child in his own home. The words "procure" and "deliver" are not defined in the statute, but the statute explicitly exempts from criminal liability a parent who "procures" alcohol for his child in any establishment licensed under G. L. c. 138, § 15, 19B, 19C, or 19D. *Id.* No explicit exemption from liability is provided for the delivery of alcohol by a parent to his child. *Id.*[12]

In her jury charge, the judge informed the jury of the three

[12]General Laws c. 138, § 34 (§ 34), states, in relevant part:

"Whoever makes a sale or delivery of any alcoholic beverage or alcohol to any person under 21 years of age, either for his own use or for the use of his parent or any other person, or whoever, being a

theories under which the defendant could be found to have violated § 34.[13] At the close of her charge, the defendant objected to the judge's failure to instruct the jury that it is not a violation of law to deliver, procure, or furnish alcohol to one's own child. The judge overruled the objection. The verdict slips as to these indictments permitted the jury to find the defendant not guilty or guilty on any or all of these theories. During deliberations, the jury asked the judge to "clarify the law on procuring, delivering, and furnishing alcohol to your own child." The judge replied in writing that "[t]he exception concerning your own child applies only to 'procuring' and 'furnishing' but does not apply to 'delivery' of alcohol." The defendant again objected to the exclusion of the "own child" exception from the delivery theory of liability. The jury later asked, "Does the law prevent us from

patron of an establishment licensed under section 12 or 15, delivers or procures to be delivered in any public room or area of such establishment if licensed under section 12, 15, 19B, 19C or 19D or in any area of such establishment if licensed under said section 15, 19B, 19C or 19D any such beverages or alcohol to or for use by a person who he knows or has reason to believe is under 21 years of age or whoever procures any such beverage or alcohol for a person under 21 years of age in any establishment licensed under section 12 or procures any such beverage or alcohol for a person under 21 years of age who is not his child, ward or spouse in any establishment licensed under said section 15, 19B, 19C or 19D or whoever furnishes any such beverage or alcohol for a person under 21 years of age shall be punished by a fine of not more than $2,000 or by imprisonment for not more than one year or both. For the purpose of this section the word 'furnish' shall mean to knowingly or intentionally supply, give, or provide to or allow a person under 21 years of age except for the children and grandchildren of the person being charged to possess alcoholic beverages on premises or property owned or controlled by the person charged. Nothing in this section shall be construed to prohibit any person licensed under this chapter from employing any person 18 years of age or older for the direct handling or selling of alcoholic beverages or alcohol."

[13]The indictments alleged that the defendant violated G. L. c. 119, § 63 (§ 63), by contributing to the delinquency of a child, but, in her final instructions to the jury, the judge explained that these indictments may be proved only if the Commonwealth proved that the defendant violated a law of the Commonwealth by delivering, procuring, or furnishing alcohol to Maxine or Sally, referring to § 34. It is not clear from the record why the Commonwealth chose to indict the defendant for violations of § 63 rather than § 34, because the maximum house of correction sentence is the same for both crimes (one year) but the maximum fine is greater under § 34: $2,000 under § 34; $500 under § 63.

finding the defendant guilty of procuring and/or furnishing alcohol to his own child?" The judge responded, "Yes." The jury then found the defendant guilty of contributing to the delinquency of Maxine under all three theories, but found him guilty of contributing to the delinquency of his own daughter only under the theory of delivery.

On appeal, the defendant challenges only his conviction of contributing to the delinquency of a child by delivering alcohol to his own daughter, arguing that the statutory exclusion for furnishing or procuring alcohol to one's own child also applies to the delivery of alcohol to one's own child. We agree.

"It is a canon of statutory construction that 'statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.' " *Welch* v. *Sudbury Youth Soccer Ass'n, Inc.*, 453 Mass. 352, 354-355 (2009), quoting *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). "While a court must normally follow the plain language of a statute, it need not adhere strictly to the statutory words if to do so would lead to an absurd result or contravene the clear intent of the Legislature." *Commonwealth* v. *Rahim*, 441 Mass. 273, 278 (2004).

We do not interpret the admittedly confusing language of § 34 to permit a parent to furnish or procure, but not deliver, alcohol to his own child in his own home. By prohibiting the "sale or delivery" of alcohol to any person under twenty-one years of age, the Legislature appears to have intended to prohibit the sale of alcohol to a minor and the subsequent delivery of alcohol to a minor pursuant to a sale. The Legislature contemplated the possibility that a parent may procure alcohol for his minor child at a licensed establishment or may furnish alcohol to such a minor child at home, and it specifically exempted a parent from criminal liability for doing so under § 34.[14] It apparently did not contemplate the possibility that a parent's furnishing of alcohol to his child in his own home might be characterized as a "delivery" of alcohol to that child, and therefore did not specifically provide for a similar exemption.

---

[14]The exemption for procuring alcohol for one's own child was enacted in 1962, see St. 1962, c. 354; the exemption for furnishing alcohol to one's own child was enacted in 2000. See St. 2000, c. 175.

We do not interpret the absence of such an exemption to mean that a parent violates § 34 by giving an alcoholic beverage to his own minor child, regardless of whether he purchased the beverage at a store or acquired it in some other manner, even where that act is characterized as a "delivery" of alcohol rather than the "furnishing" of alcohol. The legislative purpose of the exemptions was plainly to allow parents the freedom to decide whether they wish to provide alcohol to their own children without fear of criminal liability, especially where the prohibition extends not only to young children but to all persons under twenty-one years of age. Therefore, we conclude that a parent does not violate § 34 by giving his own child alcohol in his own home, regardless whether that act is characterized as furnishing or delivering. Any contrary interpretation would make the exemption meaningless, because parents would never be able lawfully to "furnish" alcohol to their child within their home without being criminally liable for "delivering" alcohol to that same child.

Because we conclude that the defendant did not violate § 34 by purchasing alcohol and then giving that alcohol to his daughter in their home, the defendant's motion for a required finding of not guilty should have been granted as to this indictment. We therefore reverse this conviction, and order that a judgment enter of not guilty.

*Conclusion.* For the foregoing reasons, we vacate the judgment of conviction of indecent assault and battery on a person over fourteen years of age, and we remand for a new trial. We reverse the conviction of contributing to the delinquency of a minor, based on a violation of § 34 with respect to Sally, the defendant's daughter, and we order that a judgment enter of not guilty on this indictment. We affirm the conviction of contributing to the delinquency of a minor with respect to Maxine.

*So ordered.*