NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-349

COMMONWEALTH

vs.

WILLIAM ORTIZ, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted after a jury trial of indecent assault and battery, the defendant, William Ortiz, Jr., appeals. He argues that the judge improperly precluded him from cross-examining the victim about her alleged extramarital affair. He contends that the victim was motivated to fabricate her allegation that he sexually assaulted her to gain the sympathy of her cousin, who is the mother of the defendant's child, so that the cousin would not disclose the affair to the victim's husband. The judge ruled that because the defendant had made no proffer of any evidence of discord between the victim and her cousin about the affair, testimony about the affair would be "too prejudicial." Because the judge did not abuse her discretion in that ruling, we affirm.

Background.  Before trial, the Commonwealth moved to preclude evidence of prior bad acts of the victim.  Asked what evidence he intended to introduce, defense counsel said that he would elicit from the victim's cousin that the victim was "jealous" of the cousin's relationship with the defendant and fabricated her sexual assault allegation against the defendant to "give herself some leverage" so that the cousin would not tell the victim's husband about the affair.  Questioned by the judge, defense counsel acknowledged that there was no direct evidence that the cousin had threatened to tell the victim's husband about the affair, or that there was any animosity between the victim and the cousin because of it.  The judge ruled that evidence that the victim was jealous of her cousin's relationship with the defendant was relevant; as to evidence of the alleged extramarital affair, absent any showing of animosity between the victim and her cousin about it, that evidence was not relevant and was unduly prejudicial.  The defendant did not raise the issue again during trial, either on cross-examination of the victim or on direct examination of the cousin.

From the evidence at trial, the jury could have found as follows.  Although the romantic relationship between the defendant and the victim's cousin had ended years before, they remained "best friend[s]."  In the autumn of 2017, the cousin experienced a death in her family.  On October 6, 2017, the

2

victim received a text message from the defendant informing her that her cousin needed "some company" to cheer her up and suggesting that they both stop by at the cousin's home.  The victim went there and watched television and listened to music with her cousin and the defendant for a few hours.  The victim's cousin said she was going to take a shower and left the room.

The defendant asked the victim if she wanted to dance.  She said no, but he was persistent.  After the victim stood and began dancing at some distance from the defendant, he pulled her closer to him.  When the defendant gestured to his penis, the victim turned to leave the room.  The defendant grabbed the victim from behind in a one-armed bear hug.  With his other hand he dug at her crotch over her clothes, grabbing at her vagina and her "bottom" with all his strength.  Eventually the defendant let go of the victim, and she fell backwards onto a living-room chair.  The defendant said excitedly, "do you know how far I shoved my hands up?"  The victim banged on the bathroom door, went to the kitchen, and later went home.

The next morning, the victim was in pain and told her husband.  That morning the victim sent the defendant a text message saying, "You owe me an apology for being a fucking pig. You should be ashamed that was NOT funny."  The defendant replied, "Im sorry I thought the same thing this morning I really didn't mean it u r my fam and I definitely don't want u

3

mad at me so once again I'm so sorry and it will never happen again."[1]

Called to testify by the defendant, the victim's cousin testified that on October 6 the victim was drinking, "dirty dancing," and making sexual comments. Later, the victim told her cousin about what had happened. The cousin sent a text message to the defendant asking, "Why didn't u tell me about what happened with [the victim]." He replied, "Cause I was disappointed with myself I was really drunk but that is no excuse. And I didn't want you to be disappointed at me thats the last thing I want. I apologize to her but didn't really get to express how embarrassed and sorry I really was."

The defendant testified that he and the victim were dancing the merengue and he was holding her waist. Then she told him his hand was "a little low," and he realized it was on her hip. He testified that he apologized to the victim then and again the next morning, and in his text messages to her and her cousin he meant that he was sorry and embarrassed for putting his hand on the victim's hip while dancing.

Discussion. On appeal, the defendant argues that the judge improperly precluded trial counsel from cross-examining the victim about her alleged affair, and that limitation violated

---

[1] Text messages are set forth as originally spelled and punctuated.

4

his Sixth Amendment and article 12 rights.  To begin with, we note that the defendant's present claim is different from the one he raised before trial.  There, he argued in response to the Commonwealth's motion in limine that he should be permitted to elicit testimony from the cousin about the victim's affair; he did not assert that he should be permitted to cross-examine the victim about it.  On appeal, the defendant argues only that the judge precluded him from cross-examining the victim, not that he should have been permitted to elicit testimony about the affair from the cousin.  In those circumstances, we doubt that the defendant has preserved for appellate review the claim he now raises -- that his cross-examination of the victim was curtailed.  See Commonwealth v. Grady, 474 Mass. 715, 719 (2016) ("An objection at the motion in limine stage will preserve a defendant's appellate rights only if what is objectionable at trial was specifically the subject of the motion in limine").  If the claim of error in the judge's evidentiary ruling was not preserved for appellate review, we would review it "to determine whether it created a substantial risk of a miscarriage of justice," id. at 721-722; if it was preserved, we would review it for prejudicial error.  We need not definitively determine which standard applies, because there was no error in the judge's ruling.

Evidence is relevant if "it has any tendency to make a fact more or less probable without the evidence."  Mass. G. Evid. § 401 (2022).  Even if evidence is relevant, a judge may exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Mass. G. Evid. § 403 (2022). See Commonwealth v. Crayton, 470 Mass. 228, 249 & n.27 (2014). As mentioned above, the judge ruled, "I don't think the fact that the cousin knew about an extra-marital affair would be relevant at trial to show the alleged victim's bias or motive to lie without some type of proffer from the defense that there had been some prior . . . animosity between the parties about the fact that the alleged victim knew that the cousin knew . . . I just think it's too prejudicial in this case."

In Commonwealth v. Parent, 465 Mass. 395, 404 (2013), the defendant sought to elicit testimony from his fiancée that, on the evening that the defendant was alleged to have committed indecent assault and battery on the victim, the fiancée overheard the victim say to someone on the telephone that she would provide oral sex to that person.  The Supreme Judicial Court rejected the defendant's argument that evidence of the victim's statement was admissible because she may have feared that the defendant or his fiancée would tell her parents about it, and therefore had a motive to fabricate her allegation that the defendant sexually assaulted her "as a sort of 'preemptive

6

strike.'" Id. The court concluded that "our common law grants a judge discretion to exclude such evidence where its primary purpose is to damage an alleged victim's credibility in the eyes of the jury by suggesting promiscuity, and the risk of unfair prejudice outweighs its probative weight." Id. at 405. The court noted that absent any evidence that the victim feared that the fiancée would reveal that information to her parents, there was "no reason to infer that any reasonable person . . . would think that a fabricated allegation of indecent assault and battery against the defendant would deter or prevent the defendant's fiancée" from disclosing the victim's statement. Id. at 406. See Mass. G. Evid. § 611(b)(2) (2022).

Here, as in Parent, the judge did not abuse her discretion in ruling that absent any evidence that the victim feared that her cousin would disclose the alleged extramarital affair, the proffered evidence was not relevant, and it was unduly prejudicial. See also Commonwealth v. Chicas, 481 Mass. 316, 319-320 (2019) (judge properly precluded defense cross-

examination of witnesses about citizenship status unless they had discussed status with police, making it relevant to bias).

<u>Judgment affirmed</u>.

By the Court (Blake, Grant & Smyth, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  April 26, 2023.

---

[2] The panelists are listed in order of seniority.