JACQUES, COMMONWEALTH vs., 102 Mass. App. Ct. 157

 
 COMMONWEALTH vs. EDEN JACQUES.

102 Mass. App. Ct. 157
 October 6, 2022 - January 17, 2023

Court Below: Superior Court, Suffolk County
Present: Green, C.J., Henry, & Englander, JJ.

 

No. 20-P-1100.

Assault with Intent to Rape. Indecent Assault and Battery. Child Abuse. Rape-Shield Statute. Witness, Credibility, Cross-examination. Evidence, Sexual conduct, Credibility of witness. Constitutional Law, Confrontation of witnesses. Practice, Criminal, Confrontation of witnesses, Argument by prosecutor.

At the trial of indictments charging the defendant with sexual offenses against two young girls, each members of a household in which the defendant also resided, the judge did not commit an abuse of discretion in excluding, under the rape shield statute, G. L. c. 233, § 21B, evidence that would have shown that, prior to accusing the defendant, the older of the two victims had made, in some aspects using almost identical language, similar allegations against a previous member of the household in which she had resided, where the evidence at issue (which was plainly sexual, and also plainly involved the victim) qualified for protection as the "victim's sexual conduct" within the meaning of the statute [161-162]; further, where the inference the defendant wished to argue from victim's prior allegations (i.e., that the coincidence with her prior allegations made her later allegations incredible) was quite attenuated, the exclusion of the evidence did not deprive the defendant of his constitutional right to cross-examine the victim [163-168]; finally, there was no merit to the defendant's contention that the prosecutor's closing argument improperly exploited the excluded evidence [168-169].

Indictments found and returned in the Superior Court Department on November 15, 2016, and November 7, 2017. 

 The cases were tried before Robert L. Ullmann, J. 

 Joshua M. Daniels for the defendant.

 Andrew Shepard Doherty, Assistant District Attorney, for the Commonwealth.

 ENGLANDER, J. After a jury trial, the defendant was convicted of multiple sexual assaults of two young girls, ages six and fifteen, each members of a household in which the defendant also resided. On appeal, the defendant principally challenges the judge's decision to exclude evidence that would have shown that prior to accusing the defendant, the older of the two victims had made 

 Page 158 

similar allegations against another member of a different household in which she resided, in some aspects using almost identical language. 

 The defendant argues that the proffered evidence was highly relevant to his defense that the charges against him were fabricated, and that the evidence was not excludable under the rape shield statute, G. L. c. 233, § 21B. The defendant does not claim that the victim's prior allegations were false, but rather, he claims that the jury should have been told of the prior allegations because their similarity undermines the credibility of the victim's allegations against the defendant, and further, because the prior events show the victim's knowledge that, by making such allegations, the defendant likely would be removed from her home. The defendant accordingly argues that the exclusion of the evidence deprived him of his constitutional rights to confront the witnesses against him and to present an appropriate defense. We conclude that the judge's exclusion of the evidence neither was an abuse of discretion nor deprived the defendant of his constitutional rights, and accordingly we affirm. 

 Background. 1. Victim 1 (Kathy). [Note 1] The first victim, Kathy, was eleven years old when she testified at trial. She testified that she was six when the defendant came to live with her mother in their apartment in Boston. 

 Kathy testified to occasions when the defendant sexually abused her while the defendant resided at the Boston apartment. On one such occasion Kathy was sleeping alone in her mother's room when the defendant got on top of her, naked, and touched her vagina with his penis. On another occasion, Kathy was standing in the basement of the apartment when the defendant penetrated her vagina while standing behind her. Kathy also testified that the defendant touched her thigh near her vagina with his hand while carrying her on his shoulders. 

 Through cross-examination, defense counsel established that Kathy had changed some of her descriptions of the abuse she suffered, and also highlighted that Kathy could not remember details surrounding these events.

 2. Victim 2 (Denise). [Note 2] The second victim, Denise, was fifteen years old when she moved with her mother, her two younger sisters, and her brother to a house in Boston, where they stayed 

 Page 159 

with her aunt. The defendant was her aunt's boyfriend, and he also moved into the home. Denise testified that at first, she got along fine with the defendant. After some time, however, Denise grew to dislike the defendant because the defendant physically punished Denise's younger sisters (one of whom was just two or three years old), and got into fights with her older brother. 

 Denise testified to several sexual assaults by the defendant. On one occasion, the defendant lay down next to Denise on a bed in her aunt's bedroom, took the covers off her, and rubbed her legs. On that same occasion, he eventually laid Denise over a stool or chair, and penetrated Denise's vagina with his penis. In other instances, when Denise was sleeping in the living room, the defendant would enter the living room, take the covers off her, pull up her shirt, and touch her breasts with his hands. Denise also testified that the defendant once moved Denise's clothes and underwear aside and touched and licked her vagina.

 In addition to incidents described above, Denise also testified about observing a video recording on the defendant's cell phone. In that recording Denise saw one of her sisters naked from the waist down, and the defendant rubbing her sister's buttocks. While no such video was introduced at trial, there was evidence that at the conclusion of a police interview, the defendant grabbed his cell phone and destroyed it in the interview room. 

 Defense counsel's cross-examination of Denise was lengthy and made several points. Counsel first established that Denise did not like the defendant, because the defendant mistreated her younger siblings, would fight with her older brother, and would argue with her mother and her aunt. Next, counsel established that Denise's trial testimony varied in several respects from her prior statements to the police. For example, although Denise testified at trial that the defendant had touched her vagina, she said at a prior interview that the defendant had not done so. Counsel also established inconsistencies between Denise's trial testimony and her interview responses concerning the cell phone video. Specifically, Denise said during her interviews that she saw the defendant's penis in that video, but during her direct examination, she testified that she saw only the defendant's hands. 

 Finally, counsel sought to introduce the evidence that Denise previously had made allegations against another person -- also a previous household member -- that were similar to allegations Denise made against the defendant. To do this counsel first had to 

 Page 160 

introduce the allegations that Denise had made against the defendant in prior interviews, because Denise had not repeated several of the prior allegations in her trial testimony. For example, counsel elicited that in a prior interview Denise had described an instance in which the defendant got into bed with Denise and her sister and rubbed their legs, at which time Denise said to the defendant that they were "going to have a problem" if he continued. Denise had also previously reported that the defendant would walk around the apartment holding his penis. Denise, however, did not make either of these allegations at trial.

 Having laid the foundation, counsel then went to sidebar: [Note 3] "Now is the time when I would like to ask [Denise] about [her similar accusations of assault by another household member] . . . . I made a checklist of the things that she sa[id] [about the other household member] and the things she said today [about the defendant]." Defense counsel then made a detailed offer of proof. He stated, for example, that Denise had stated that the other person had gotten into bed with her and the same sister and rubbed their legs, and that Denise had said to him that they were "going to have a problem" if the person continued. The prosecution objected to the evidence, [Note 4] and the judge excluded it. The judge stated first that he did not view the evidence as targeting "any of the key areas of bases of cross-examination" -- "inconsistent statements, bias, motive, [or] failing of perception" -- and second that he did not believe that the evidence fell within the "limited exceptions to the rape shield statute." The defendant argues that this was error.

 3. Commonwealth's closing argument. The defendant also argues that the prosecutor's closing argument was improper. In particular, the defendant principally highlights the prosecutor's argument that the allegations of the two victims were "not recycled accusation[s]," but were "independent accounts of what the defendant did to them." Defense counsel objected to this argument as unfairly taking advantage of the judge's exclusion of the evidence concerning Denise's allegations against the other household member. The judge took no action on the objection. 

 Page 161 

 The jury convicted the defendant of six counts, while acquitting him of others. As to Kathy, the defendant was convicted of one count of assault with intent to rape a child and one count of indecent assault and battery on a child under fourteen. With respect to Denise, the defendant was convicted of one count of assault with intent to rape a child and two counts of indecent assault and battery on a person over fourteen. The defendant was also convicted of evidence tampering in connection with the destruction of his cell phone. [Note 5] This appeal followed.

 Discussion. The critical question presented is one of evidence: did the judge err in excluding the proffered evidence of Denise's prior allegations against a different household member, regarding actions that took place at a different time. Resolution of this question requires consideration of at least three sources of law -- (1) the rape shield statute, G. L. c. 233, § 21B, (2) the established law regarding admission of prior specific instances of conduct ("other acts" evidence), for impeachment of a testifying witness, see, e.g., Commonwealth v. Clifford, 374 Mass. 293, 298 (1978), and (3) the overarching constitutional limitations on the exclusion of evidence, when such exclusion would deprive a criminal defendant of his or her rights to confront and cross-examine witnesses and to present an appropriate defense, see Commonwealth v. Polk, 462 Mass. 23, 37-38 (2012). We consider each of these sources of law in turn, and then as they interrelate to the facts at bar. 

 1. The rape shield statute. The rape shield statute, G. L. c. 233, § 21B, states in pertinent part: 

"Evidence of specific instances of a victim's sexual conduct in . . . [a] . . . proceeding [relating to certain sex offenses] shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof" (emphasis added).

 The Commonwealth contends that the evidence of Denise's prior allegations was properly excluded under this statute, as it 

 Page 162 

constituted prior "sexual conduct" of Denise, the victim witness. The defense contends, to the contrary, that the statute does not apply, because the evidence at issue merely consists of Denise's prior allegations of sexual assault, and "[a]ccusing someone of sexual assault is not itself 'sexual conduct' under the statute."

 We agree that the evidence at issue falls within the protection of the rape shield statute. The evidence concerns specific instances of sexual conduct engaged in by a third party (i.e., not the defendant) but that also involved the victim -- that is, the third party exposed his penis to the victim, and got in bed and rubbed her legs. While it is true that in these examples the victim did not act sexually, we do not agree that the sole purpose of the rape shield statute is to exclude evidence of prior behavior that might be considered promiscuous. More broadly, another purpose of the statute is to protect victims from being cross-examined and possibly revictimized, by having to revisit prior sexual events. See Commonwealth v. Harris, 443 Mass. 714, 722-723 (2005), quoting State v. Williams, 224 Kan. 468, 470 (1978) (rape-shield statute also "eliminat[es] a common defense strategy of trying the complaining witness rather than the defendant," thereby avoiding "harassment and further humiliation of the victim [and] discouraging victims of rape from reporting the crimes to law enforcement authorities"). Here, where the conduct at issue was plainly sexual, and also plainly involved the victim (though unwillingly), we cannot conclude that it nevertheless does not qualify for protection as the "victim's sexual conduct." No case so holds, and indeed, several prior cases have considered the application of the rape shield statute to evidence that the victim was sexually assaulted, without suggesting that the statute might not apply. See Polk, 462 Mass. at 37-39 (analyzing interplay of defendants' constitutional rights and rape shield statute in connection with evidence of prior sexual assaults of victim); Commonwealth v. Pearce, 427 Mass. 642, 647-648 (1998) (evidence of prior molestation properly excluded under rape shield statute). Cf. Commonwealth v. Parent, 465 Mass. 395, 404-405 (2013) (noting "sexual conduct" undefined in statute and passing on question whether victim's offer of oral sex constituted "sexual conduct"). [Note 6] 

 Page 163 

 2. Other acts evidence. Our analysis does not end, however, with the conclusion that the proffered evidence fell within the rape shield statute. It is well established that "where the rape shield statute is in conflict with a defendant's constitutional right to present evidence that might lead the jury to find that a Commonwealth witness is lying or otherwise unreliable, the statutory prohibition must give way to the constitutional right." Polk, 462 Mass. at 37-38; Commonwealth v. Joyce, 382 Mass. 222, 231 (1981) (rape shield statute overridden by "constitutionally based right of effective cross-examination"). The above statements of law beg the question of how one defines the boundaries of the constitutional right. Before tackling that question, however, we should have in mind the significant body of evidence law regarding the admissibility of "other acts" evidence.

 The question whether to admit evidence of a witness's prior conduct that may bear on the reliability of testimony or other issues in a case is hardly new. Courts have grappled with the problem for centuries, and there are several sections in the Massachusetts Guide to Evidence that address various aspects of the problem. Evidence of prior conduct includes evidence of a person's reputation (including reputation for truthfulness), and evidence of prior specific instances of conduct ("other acts" or "prior bad acts"). In general, both types of evidence are disfavored, and not admitted. There are many exceptions to the general rules, of course, but the rules themselves are longstanding. See Commonwealth v. Bonds, 445 Mass. 821, 829 (2006) ("[a]s a general rule, evidence of a person's character is not admissible" [citation omitted]). See also Commonwealth v. Libran, 405 Mass. 634, 640 (1989) ("Evidence of prior misconduct is not generally admissible to prove bad character or a propensity to commit crimes"). 

 The reasons for these rules have been well stated elsewhere. Reputation evidence has limited probative value -- it "might erroneously lead a jury to conclude a person acted in a particular way simply because his character suggests that he would." Bonds, 445 Mass. at 829. This same concern applies to evidence of prior specific instances of conduct, whether it is prior conduct of a criminal defendant or of an important witness such as a victim. See Commonwealth v. Jackson, 132 Mass. 16, 20-21 (1882). Indeed, even before the rape shield statute the common law generally barred evidence of specific instances of a victim's prior sexual conduct, in part because of its "limited probative value." See Joyce, 382 Mass. at 227. See also Commonwealth v. Domaingue, 

 Page 164 

 397 Mass. 693, 698 (1986) ("The section of the rape-shield statute . . . which bars the admission of evidence of specific instances of sexual conduct of the victim, is essentially a reflection of the preexisting common law rule"). Moreover, in addition to concerns about relevance, other acts evidence tends to prolong the trial and to confuse the issues by "divert[ing] the attention of the jury from the [issue] immediately before it" and onto collateral matters. See Jackson, supra at 20. See also Commonwealth v. Fontes, 396 Mass. 733, 736-737 (1986) (acknowledging that "admission of evidence of specific acts of [the victim]" has potential to "extend[][the trial] unreasonably by consideration of collateral points," but that "[t]rial judges can control undue investigation of collateral matters").

 Importantly, although there are several circumstances under which prior specific instances of conduct may be admitted (often with limitations as to purpose), in that context judges have considerable discretion in deciding admissibility. See Commonwealth v. Veiovis, 477 Mass. 472, 481-482 (2017). Such evidence must always be relevant, Commonwealth v. Helfant, 398 Mass. 214, 225 (1986) -- a determination "entrusted to the trial judge's broad discretion." Commonwealth v. Simpson, 434 Mass. 570, 579 (2001). And since evidence of prior specific instances of conduct is collateral to the issues being tried and carries the potential for undue prejudice, judges can always intervene "to prevent the danger of overwhelming a case with" it (quotation and citation omitted). Commonwealth v. White, 475 Mass. 724, 744 (2016). We give deference to these discretionary decisions and will not reverse absent an error of law or clear error of judgment. See Veiovis, 477 Mass. at 482.

 3. The defendant's constitutional rights. The defendant's principal contention -- in the face of the rape shield law and the general disfavor of evidence of "other acts" -- is that he had a constitutional right to cross-examine the victim about her prior allegations. There is indeed a constitutional right to cross-examine -- the Supreme Judicial Court has described it more broadly as a "right to present evidence that might lead the jury to find that a Commonwealth witness is lying or otherwise unreliable." Polk, 462 Mass. at 38. Where it applies, this constitutional right supersedes the rape shield statute and requires that the defendant's proffered evidence be admitted. See id. at 37-38. The right is "not absolute," of course. See Commonwealth v. Walker, 438 Mass. 246, 253 (2002). A criminal defendant is not entitled to pursue 

 Page 165 

whatever cross-examination he or she chooses. See id. (judges have "broad discretion to determine the scope and extent of cross-examination"). The rules regarding relevance, undue prejudice, and unnecessary confusion are not suspended for a criminal defendant. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("insofar as the Confrontation Clause is concerned" judges may "impose reasonable limits on . . . cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, . . . or interrogation that is . . . only marginally relevant").

 The constitutional right at issue derives from both the confrontation clause and the due process clause and concomitant principles of our own Declaration of Rights. See Commonwealth v. Bui, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995) (right "is well established in the common law, in the United States Constitution [Sixth Amendment], and in the Constitution of the Commonwealth [art. 12 of the Declaration of Rights]"). The scope of the right is not easily defined, as each case requires an evaluation of the importance and probative value of the evidence the defendant seeks to introduce. In one of the early United States Supreme Court cases on this topic, for example, the defendant had been prevented from cross-examining the government's key identification witness about the fact that the witness was then on probation for a relevant crime that he had committed as a juvenile. Davis v. Alaska, 415 U.S. 308, 314 (1974). The defendant's theory was that this evidence "suggest[ed] that [the witness] was biased" -- that is, it supported "an inference of undue pressure [by the police] because of [the witness]'s vulnerable status as a probationer . . . [and his] possible concern that he might be a suspect." Id. at 318-319. The Court concluded that exclusion of this cross-examination violated the defendant's right of confrontation, because the evidence could have "[s]erious[ly] damage[d] . . . the strength of the State's case," id. at 319, which was highly dependent on "[t]he accuracy and truthfulness of [the witness]'s testimony," id. at 317.

 Several decisions of the Supreme Judicial Court have applied this constitutional right in the context of defense efforts to examine victims in sexual assault trials, sometimes holding that the defendant was entitled to adduce the proffered evidence, and sometimes not. [Note 7] Of these cases, the most recent is Polk, supra. There, the defendant was charged with sexually assaulting his 

 Page 166 

fifteen year old adoptive niece, who had previously made statements accusing her biological uncles of sexual abuse. 462 Mass. at 24, 27. In that context the defendant sought to introduce "evidence of [the victim's] [prior] sexual abuse," and her "inconsistent memory" of it, id. at 37, 38, "to demonstrate the significant possibility that [the victim] . . . confabulated her memory of" that prior abuse with "the defendant's alleged sexual assaults," id. at 38.

 The trial judge excluded the evidence, and on appeal the Supreme Judicial Court reversed, holding that "[b]ecause such evidence, if credited, would [have] materially affect[ed] the jury's evaluation of [the victim's] credibility and reliability, and because it was not cumulative of other admitted evidence, . . . the defendant was constitutionally entitled to present" it. Id. at 38-39.

 The defendant argues that Polk controls here, but although the case is indeed a close one, we do not agree. First, Polk is distinguishable on its facts. In Polk the proffered evidence was offered to show that the victim may have "suffered from dissociative memory," and so was "confusing the source of the abuse" and "inferring facts to fill in the blanks of her memory" so as to accuse the defendant. Id. at 38. In other words, the evidence undercut the victim's reliability with respect to her identification of the defendant as her abuser. See id. The defendant's theory here, however, is not one of confabulation or mistaken identification, but rather that Denise's prior abuse helped her to fabricate the allegations against the defendant and provided her with knowledge that her allegations could result in the defendant being removed from her home. The theory thus required the jury to follow, and to accept, additional logical steps beyond those in Polk.

 Second, we in any event are not persuaded that the constitutional standard has been met here -- whether the defendant's "evidence, if credited, would materially affect the jury's evaluation 

 Page 167 

of [the witness's] credibility and reliability." Id. at 38-39. The evidence is of "specific instances" of conduct -- allegations made by Denise about sexual conduct involving a different person at a different time. While the defendant urges that the evidence is nevertheless probative because (in his view) it supports a conclusion of fabrication, the evidence is not as unique or compelling as the defendant suggests. In this case Denise testified to numerous assaults by the defendant, but only a few of her allegations mirrored her prior allegations against the other perpetrator. The bulk of Denise's allegations were unique to this defendant. Moreover, the defendant does not argue that the prior allegations were false, [Note 8] and thus this case does not fall within the rule of Commonwealth v. Bohannon, 376 Mass. 90 (1978), 

S.C., 385 Mass. 733 (1982), which has been applied to hold that prior false allegations of sexual conduct were not excluded by the rape shield statute. See Commonwealth v. Nichols, 37 Mass. App. Ct. 332, 336-337 (1994). In short, the inference the defendant wished to argue from Denise's prior allegations -- to the effect that the coincidence with her prior allegations made her later allegations incredible -- was quite attenuated.

 At bottom, we are not persuaded that there was a constitutional violation here -- or put differently, we are not persuaded that the defendant had a constitutional right to cross-examine the victim regarding her prior, other act allegations involving a third party that are not alleged to have been false. We acknowledge that such a conclusion is highly fact dependent, and difficult to capture in a standard such as the court employed in Polk. See 462 Mass. at 38-39. Nevertheless, as discussed above trial courts have historically had significant discretion to exclude "other act" evidence because of its generally lesser probative value and its potential to confuse and distract. That discretion is augmented by the rape shield statute and the concerns underlying it. See Harris, 443 Mass. at 728 (discretion informed by "the policies to be promoted by the rape-shield statute"). The constitutional rights at issue do not substantially alter such longstanding evidentiary considerations. See id. at 721 ("even when offered to show bias or motive to lie, the judge should exercise discretion with respect to the introduction of" evidence of prior sexual conduct).

 Page 168 

 Finally, we note that the traditional concerns with "other act" evidence are present in this case, and reinforce our conclusion that the judge's exercise of discretion should not be overturned. As noted, the probative value of the proffered testimony is certainly debatable. Moreover, the defendant's evidence of prior allegations brings with it the other common concerns with such evidence: how will the prior acts be proved, and how far afield will the parties be allowed to go in proving it? See Joyce, 382 Mass. at 227 ("collateral questions relating to the specific [sexual conduct] would prolong the trial and divert the attention of the trier of fact from the alleged criminal acts of the defendant"). See also Harris, 443 Mass. at 727 & n.12. The defendant seems to assume that he could have introduced all the evidence of the victim's prior allegations through cross-examination of the victim. Suppose, however, that the Commonwealth had then sought to rebut any inference that the victim's prior allegations were false, by introducing that the other perpetrator had been tried, and convicted, of sexual assault? The result could have been a confusing and time-consuming detour into a different case, not before this jury. These are the valid concerns that a trial judge must address when confronted with other act evidence, and it is for good reason that we generally defer to the judge's discretion in weighing such concerns. Here we find no abuse of discretion in the exclusion of the evidence, nor do we think its admission compelled by either the Federal or Massachusetts Constitution. 

 4. Closing argument. We also do not agree with the defendant's argument that the prosecutor's closing improperly exploited the excluded evidence of Denise's prior allegations against another individual. In closing, defense counsel argued, in essence, that Denise's allegations were borrowed from information relayed to her by Kathy. The prosecutor argued in response that the two victims did "not recycle[] accusation[s]" from one another, but instead provided "independent accounts of what the defendant did to them" by "describ[ing] their different experiences." In context, the prosecutor's statement did not speak to Denise's prior allegations against a third party, but rather addressed the defendant's argument that Denise's allegations were recycled from Kathy -- a theory that the defendant was allowed to and in fact did explore. There was therefore no error because the prosecutor did not "exploit the absence of evidence that was excluded at his or her request." See Commonwealth v. Lopez, 474 Mass. 690, 

 Page 169 

699-700 (2016). [Note 9]

 Judgments affirmed.

FOOTNOTES
[Note 1] A pseudonym. 

[Note 2] A pseudonym. 

[Note 3] The judge had already addressed the issue at a motion in limine hearing, and had indicated that he had concerns about allowing the evidence in. 

[Note 4] The prosecution argued, among other things, that the evidence was inadmissible under the rape shield statute because it did not fall within the narrow exception to that statute applicable where there is proof that the prior accusations were false. 

[Note 5] This conviction resulted from a related Superior Court case that was consolidated in this appeal. The defendant makes no argument concerning that conviction, and his appeal therefrom is waived. 

[Note 6] To the extent the defendant is arguing that the rape shield statute does not apply because the victim was to be asked only about prior statements she made, rather than about what actually happened, we again are not persuaded. The contemplated cross-examination would require the victim to discuss sexual conduct involving herself. 

[Note 7] Thus, in Joyce, supra, evidence that the victim had been previously charged with prostitution was admissible to show that the victim was biased and "motivated falsely to accuse the defendant of rape by a desire to avoid further prosecution." 382 Mass at 230. Later, in Harris, supra, the Supreme Judicial Court held that evidence of the complainant's prior conviction of being a "common nightwalker" should not have been categorically excluded under the rape shield statute where "evidence of the complaining witness's sexual conduct [may be] relevant to the complainant's bias or motive to fabricate." 443 Mass. at 721. Other cases have held that efforts to cross-examine a victim were properly prohibited. See, e.g., Pearce, 427 Mass. at 647-648 (judge acted within "sound discretion" in excluding evidence that the victim had been molested previously). 

[Note 8] The defendant expressly disclaims any argument that Denise's prior allegations were false. We note, however, that had the evidence been allowed the defendant may well have hoped that the jury would indulge such an inference on its own. For this reason, we think that the evidence at issue raises concerns similar to those implicated by "prior bad act" evidence. 

[Note 9] The defendant also argues that he should be granted a new trial because Kathy's grandmother referred to the defendant as a "rapist" during her testimony. There was no objection or motion to strike, and so we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). In so doing, we ask whether "we are persuaded that [the error] did not 'materially influence[]' the guilty verdict," and consider, among other things, whether it can be inferred from the record that the failure to object was the result of a reasonable tactical decision of counsel. Id. At trial, the defendant had pressed the argument that Kathy's grandmother had caused Kathy to fabricate her allegations. Indeed, the references that the defendant complains of came during the grandmother's cross-examination, when the defendant was exploring this theory. We therefore are persuaded that, although likely objectionable, the grandmother's characterizations did not create a substantial risk of a miscarriage of justice. See Commonwealth v. Bynoe, 49 Mass. App. Ct. 687, 694-695 (2000) (no substantial risk of a miscarriage of justice where defendant "had something to gain" by not objecting). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.