SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. EDEN JACQUES

 
 Docket:
 SJC-13461
 
 
 Dates:
 January 8, 2024 - October 2, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Assault with Intent to Rape. Indecent Assault and Battery. Child Abuse. Rape-Shield Statute. Witness, Credibility, Cross-examination. Evidence, Sexual conduct, Credibility of witness. Constitutional Law, Confrontation of witnesses. Practice, Criminal, Confrontation of witnesses, Argument by prosecutor.
 
 

             Indictments found and returned in the Superior Court Department on November 15, 2016, and November 7, 2017.
            The cases were tried before Robert L. Ullmann, J.
            After review by the Appeals Court, 102 Mass. App. Ct. 157 (2023), the Supreme Judicial Court granted leave to obtain further appellate review.
            Joshua M. Daniels for the defendant.
             Andrew Shepard Doherty, Assistant District Attorney (Kyle E. Siconolfi, Assistant District Attorney, also present) for the Commonwealth.
            GEORGES, J.  The defendant, Eden Jacques, appeals from his convictions of sexual offenses against two minor girls.  The defendant asserts two claims of error.  First, he contends that the trial judge erred in concluding the rape shield statute, G. L. c. 233, § 21B, barred evidence of one complainant's prior allegations of sexual abuse by a third party.  Second, he maintains that, even if evidence of the prior allegations of sexual abuse was proscribed by the statute, the trial judge nonetheless erred by precluding this line of questioning during defense counsel's cross-examination of the complainant, thwarting his constitutional rights[1] to confront an adverse witness and to present a complete defense.
             As to the defendant's first argument, we disagree; prior sexual abuse constitutes "sexual conduct" for purposes of the rape shield statute, thereby restricting the admissibility of evidence of that abuse.  As to his second argument, we agree that the trial judge erred by foreclosing all cross-examination about the third-party abuse.  We reverse the defendant's convictions and remand for a new trial.[2]
            1.  Background.  a.  Procedural history.  In January 2016, a grand jury indicted the defendant for sexual assault offenses against Kathy and Denise,[3] two minor girls who lived with the defendant at the time the alleged sexual abuse occurred.  As against Kathy, the defendant was charged with one count of assault with intent to rape a child, G. L. c. 265, § 24B; two counts of aggravated rape of a child, G. L. c.  265, § 23A; and two counts of indecent assault and battery on a child under fourteen years of age, G. L. c. 265, § 13B.  Regarding Denise, the defendant was charged with one count of aggravated rape of a child, G. L. c.  265, § 23A; two counts of assault with intent to rape a child, G. L. c. 265, § 24B; and three counts of indecent assault and battery on a person age fourteen or older, G. L. c. 265, § 13H.  Prior to trial, the Commonwealth moved, pursuant to the rape shield statute, G. L. c. 233, § 21B, to exclude evidence of a third-party sexual assault against Denise.  The trial judge reserved judgment on the motion until trial and ultimately foreclosed this line of questioning as discussed below.
            The jury found the defendant guilty of assault with intent to rape a child (Kathy), indecent assault and battery on a child under fourteen years of age (Kathy) as a lesser included offense of aggravated rape of a child, assault with intent to rape a child (Denise), and two counts of indecent assault and battery on a person age fourteen or older (Denise).[4]  As to the remaining charges, the jury found the defendant not guilty with respect to several offenses, including assault with intent to rape a child (Denise), and the remainder were dismissed at the request of the Commonwealth.  The defendant appealed from his convictions, which the Appeals Court affirmed.  Commonwealth v. Jacques, 102 Mass. App. Ct. 157 (2023).  We granted the defendant's application for further appellate review.
            b.  Facts.  The Commonwealth's case relied primarily on the testimony of Kathy and Denise.  We summarize the evidence pertaining to each complainant.
            i.  Kathy.  The defendant began living with Kathy and her mother, Sophia,[5] in their Boston apartment when Kathy was approximately six years old.  At that time, the defendant was dating Sophia.  Kathy, who was eleven years old by the time of trial, described three incidents of sexual abuse, as summarized by the Appeals Court:
"On one . . . occasion Kathy was sleeping alone in her mother's [bed]room when the defendant got on top of her, naked, and touched her vagina with his penis.  On another occasion, Kathy was standing in the basement of the apartment when the defendant penetrated her vagina while standing behind her.  Kathy also testified that the defendant[, over her clothes,] touched her thigh near her vagina with his hand while carrying her on his shoulders."
Jacques, 102 Mass. App. Ct. at 158.  Kathy explained that, after she disclosed the bedroom incident to her mother, she went to live with her father and grandmother, both of whom questioned her about the alleged abuse.
            However, defense counsel suggested it was instead the disclosure of a shoulder-riding incident -- rather than the bedroom incident -- that led to Kathy leaving her mother's household and, further, that the shoulder-riding incident was completely innocuous, without any intended inappropriate touching.  Then, per defense counsel's theory, the repeated questioning about the shoulder-riding incident by untrained individuals caused Kathy to infuse sexual details into that incident and to make additional sexual assault accusations, including the bedroom incident, that did not happen.
            In support of this theory, defense counsel elicited testimony from Kathy that she discussed the abuse with multiple people, including her father, her grandmother, her aunt, and the prosecutor.  Kathy further testified on cross-examination that, though she disclosed the shoulder-riding incident to her mother, she could not recall how soon thereafter she left the household.  However, this testimony did not fully support the defendant's theory, as Kathy's uncertainty about the timing of her departure from that household left open the possibility that she continued to live with the defendant until she also disclosed the bedroom-incident -- i.e., before she was repeatedly questioned by other family members.
            Defense counsel further attempted to undermine Kathy's credibility by highlighting discrepancies between her trial testimony and her prior statements regarding the abuse.  For example, although Kathy had previously claimed that the defendant penetrated her with a stick, she did not recall at trial having made this allegation and testified she did not know if the defendant had in fact done so.
            ii.  Denise.  Denise is Kathy's cousin.  When she was fifteen years old, Denise moved into her Aunt Sophia's apartment (Kathy's mother), along with her mother and three siblings.  When Denise and her family moved into the apartment, Kathy was not living there.  Soon after the move, the defendant also began living with Sophia.
            Denise initially thought the defendant was "cool."  Her perception soon changed as the defendant began to harshly discipline Denise's younger siblings.  On one occasion, the defendant hit Denise's sister, who was about eight years old, "because she gave his dog a bone," and this led to a physical altercation between Denise's brother and the defendant.
            Denise, who was eighteen years old at the time of trial, testified that the defendant eventually started to sexually abuse her while they lived together.  As summarized by the Appeals Court:
"On one occasion, the defendant lay down next to Denise on a bed in her aunt's bedroom, took the covers off her, and rubbed her legs.  On that same occasion, he eventually laid Denise over a stool or chair, [pulled down his pants and Denise's pants,] and [then] penetrated Denise's vagina with his penis.  In other instances, when Denise was sleeping . . . , the defendant would enter the . . . room, take the covers off her, pull up her shirt, and touch her breasts with his hands.  Denise also testified that the defendant once moved Denise's clothes and underwear aside and touched and licked her vagina."
Jacques, 102 Mass. App. Ct. at 159.
            During cross-examination, defense counsel attempted to undermine Denise's credibility by "establish[ing] that Denise's trial testimony varied in several respects from her prior statements to the police."  Jacques, 102 Mass. App. Ct. at 159.  "For example, although Denise testified at trial that the defendant had touched her vagina, she said at a prior interview that the defendant had not done so."  Id.  Defense counsel also elicited further details about the defendant's alleged abuse.  Of note, on cross-examination, Denise testified:  (1) her Aunt Sophia warned her that the defendant was "sneaky"; (2) the defendant offered her twenty dollars for sex and to dance for him; and (3) the defendant sometimes walked around the house with his penis exposed.
            After eliciting these details from Denise, defense counsel sought to cross-examine her about her allegations of past sexual assaults by a third party, who was not the defendant, which were documented during a sexual abuse intervention network, or SAIN, interview.  To justify this line of inquiry, defense counsel made an offer of proof to the trial judge pointing out the following similarities between Denise's trial testimony regarding the defendant and the third-party assault allegations:  (1) Denise's initial impressions of both men were positive but soon changed; (2) Sophia and a different aunt each warned Denise about the defendant and the third party, respectively, using identical language -- i.e., "sneaky"; and (3) both men, on separate occasions, engaged in similarly abusive conduct, including rubbing Denise's legs while she was asleep in bed, touching her breasts, walking around the house with their penises exposed, and offering her twenty dollars to engage in sexual acts.  Defense counsel sought to cross-examine Denise about her allegation of the third-party assaults to suggest that Denise utilized the details of that prior sexual abuse to fabricate her allegations against the defendant.[6]
            The trial judge prohibited this line of questioning, reasoning that evidence of the third-party assaults did not fall within any of the "key areas" of cross-examination or the "limited exceptions" to the rape shield statute.  The judge further explained that, even if evidence of the third-party assaults were admissible, he retained discretion to prohibit this line of questioning, given that Denise had been sufficiently impeached through other means and "the policy of protecting women, and . . . even more so, protecting children under the rape shield statute," favored exclusion.
            2.  Discussion.  The issue is whether the trial judge erred by prohibiting the defendant from cross-examining Denise about the third-party assaults.  In general, "[w]e review the judge's decision to limit the defendant's cross-examination for an abuse of discretion."  Commonwealth v. Chicas, 481 Mass. 316, 319 (2019).  If, however, the abuse of discretion inquiry "is based in part on whether the judge made an error of law in interpreting the relevant statute[,] we review the interpretation of a statute de novo."  Commonwealth v. K.W., 490 Mass. 619, 624 (2022).
            Initially we must decide whether the rape shield statute, G. L. c. 233, § 21B, bars the defendant from introducing evidence of Denise's allegations concerning her sexual abuse by the third party.  Even if we answer that question affirmatively, we must then determine whether the trial judge's limitation of Denise's cross-examination violated the defendant's constitutional rights.  See Commonwealth v. Polk, 462 Mass. 23, 37–38 (2012).  See also Mass. G. Evid. § 412(b)(3) (2024) (notwithstanding rape shield prohibitions, courts may admit "evidence whose exclusion would violate the defendant's constitutional rights").
            a.  The rape shield statute.  The rape shield statute prohibits the admission of "[e]vidence of specific instances of a victim's sexual conduct" at trials concerning certain sexual offenses.  G. L. c. 233, § 21B.  Since "sexual conduct" is undefined within the rape shield statute, we interpret these words according to their plain meaning.  See Commonwealth v. Parent, 465 Mass. 395, 404 (2013).
            The defendant contends that Denise's statements concerning the sexual abuse by the third party, even while admittedly concerning sexual conduct that previously occurred, are not themselves "sexual conduct" within the ambit of the rape shield statute.  We disagree.  Rather, we agree with the Appeals Court that Denise's statements concerned "conduct . . . [that] was plainly sexual, and also plainly involved the [complainant] (though unwillingly)."  Jacques, 102 Mass. App. Ct. at 162.  Moreover, the rape shield statute does not distinguish between willing and unwilling sexual conduct.  Accordingly, even while Denise's statements are not literally sexual conduct in themselves, they are plainly "[e]vidence of specific instances of a victim's sexual conduct" (emphasis added).  G. L. c. 233, § 21B.
            We are not persuaded to the contrary by the defendant's reliance on Commonwealth v. Bohannon, 376 Mass. 90 (1978).  Bohannon does not concern the scope of the rape shield statute, which we expressly did not reach.  Id. at 95 ("We . . . do not reach any issues related to the recently enacted 'rape-shield' statute").  Moreover, the defendant misconstrues Bohannon.  In Bohannon, defense counsel sought to cross-examine the complainant on past false allegations of rape.  Id. at 92-95.  As such, we held that cross-examining the complainant on the prior allegations would not elicit testimony about "prior sexual activity," since no such conduct had occurred.  Id. at 95.
            Unlike in Bohannon, here, defense counsel sought to cross-examine Denise about the third-party allegations to demonstrate (1) the prior sexual abuse did occur (i.e., the allegations were true) and (2) Denise used details from this actual, prior abuse to fabricate her allegations against the defendant.  Accordingly, this line of questioning implicated "specific instances" of Denise's prior "sexual conduct," which is prohibited by the rape shield statute.  G. L. c. 233, § 21B.  There was no error.
            b.  Constitutional rights.  The defendant next argues he is entitled to a new trial because, by foreclosing all questioning of Denise about the third-party assaults, the trial judge violated his constitutional rights to confront Denise and to present a defense.  We agree.
            Under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, a defendant has a constitutional right to present a defense, see Chambers v. Mississippi, 410 U.S. 284, 294, 302 (1973); Commonwealth v. Lopez, 474 Mass. 690, 695 (2016), as well as a right to confront and cross-examine adverse witnesses, see Commonwealth v. Durham, 446 Mass. 212, 225, cert. denied, 549 U.S. 855 (2006).  "We have recognized . . . that where the rape shield statute is in conflict with a defendant's constitutional right[s] . . . , the statutory prohibition must give way to the constitutional right[s]."  Polk, 462 Mass. at 37–38.
            To determine if the defendant is entitled to a new trial on these grounds, we conduct a two-step analysis.  First, "[w]e must determine . . . whether the defendant's constitutional rights were violated."  Commonwealth v. Vardinski, 438 Mass. 444, 450 (2003).  Second, assuming we conclude a violation occurred, we then must determine whether it was "harmless beyond a reasonable doubt."  Id.  If not, the defendant is entitled to a new trial.  See id.  Here, because "the right to cross-examine is so closely linked to the right to put on a defense," we consider "both [rights] under the more specific right to cross-examine."  Id.
            "The right to confrontation guarantees that, in most circumstances, a criminal defendant as a matter of right may cross-examine the prosecution's witnesses."  Commonwealth v. Miles, 420 Mass. 67, 71 (1995).  "However, a criminal defendant's confrontation right is not absolute."  Id.  "[T]he scope of cross-examination rests largely in the sound discretion of the trial judge."  Id.  "In determining whether a defendant's constitutional right to cross-examine and thus to confront a witness against him has been denied because of an unreasonable limitation of cross-examination, we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination."  Id. at 72.
            First, we consider the materiality of Denise's direct testimony.  Here, Denise's direct testimony -- and by extension, her credibility -- was undisputedly critical to the Commonwealth's case.  See Commonwealth v. Kapaia, 490 Mass. 787, 793 (2022) ("[c]redibility is a question for the jury to decide" [citation omitted]).  As is often the case for victims of sexual abuse, Denise's testimony was the only direct evidence of the assaults, given the lack of any corroborating physical evidence or eyewitness testimony.
            Next, we turn to the degree of restriction on cross-examination.  Although defense counsel did have an opportunity to cross-examine Denise on other topics, the trial judge precluded any questioning about Denise's prior allegations of sexual abuse at the hands of the third party.  Defense counsel sought to highlight for the jury the "improbability" that certain unique details of the third party's abuse also occurred when the defendant allegedly abused Denise.  Obiazor v. United States, 964 A.2d 147, 151 (D.C. 2009).  By doing so, defense counsel could argue to the jury that the improbability of these similarities "suggest[ed] fabrication."  Brown v. Commonwealth, 29 Va. App. 199, 216 (1999).  See Polk, 462 Mass. at 38–39.  That is, these similarities, defense counsel argued, were improbable and suggested that Denise was drawing from her memories of the third party's abuse rather than from any abuse by the defendant.  Defense counsel contended this was the "crux of the defense."  Miles, 420 Mass. at 72.
            Among the details at issue, defense counsel sought to highlight that the third party had asked the complainant to have sex in exchange for twenty dollars and had walked around the house while exposing his penis.  According to the defense, that Denise likewise alleged the defendant had asked her to have sex in exchange for the same amount of money and further alleged the defendant had walked around the house while exposing his penis suggests Denise fabricated these details against the defendant.  Also suggesting fabrication, per the defense's theory, is the coincidence that Sophia warned Denise that the defendant was "sneaky" -- the same word a different aunt had used to warn Denise about the third party.
            The trial judge prohibited all inquiry into the possibility that Denise imported components of the third party's abuse into her allegations against the defendant, a ruling that kept from the jury facts central to assessing Denise's credibility.  See Commonwealth v. Sealy, 467 Mass. 617, 623 (2014) (right to cross-examine "includes the opportunity to show that . . . testimony is . . . unbelievable" [citation omitted]); Vardinski, 438 Mass. at 451-452 (restriction on cross-examination that "eviscerated the defendant's trial strategy" was "extreme").  Considering the materiality of Denise's direct testimony to the Commonwealth's case, as well as the restriction on cross-examination regarding the abuse by the third party (particularly with respect to any unique similarities that this abuse shared with the allegations made against the defendant), we conclude that the defendant's constitutional rights were violated.[7]  See Miles, 420 Mass. at 72.
            We now consider whether this error by the trial judge prejudiced the defendant, requiring a new trial.  See Polk, 462 Mass. at 39.  As the error here was preserved, we review to determine whether it was harmless beyond a reasonable doubt.  See Vardinski, 438 Mass. at 452 ("[t]he admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt'" [citation omitted]).
            In analyzing whether an improper limitation on cross-examination was harmless, we consider:  "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case" (citation omitted).  Vardinski, 438 Mass. at 452.  We resolve all ambiguities in favor of the defendant.  Id. at 452-453.  When applied to the facts of this case, the combined weight of these factors favors reversal.
            First, as previously discussed, Denise's testimony was central to the Commonwealth's case.  It was the only direct evidence of Denise's sexual abuse and was not cumulative of other evidence.  See Vardinski, 438 Mass. at 452-453.  Second, the cross-examination of Denise, while extensive, concerned an entirely different topic -- the discrepancies in her allegations against the defendant -- not the marked similarities between those allegations and the allegations against the third party.  Thus, "the fact that [Denise's] credibility was impeached for other reasons does not render the restriction on the cross-examination harmless."  Commonwealth v. Stockhammer, 409 Mass. 867, 879 (1991).
            Third, this is not a circumstance where the strength of the Commonwealth's case obviates the constitutional error.  Cf. Miles, 420 Mass. at 73 (improper limitation on cross-examination did not require reversal "[i]n light of the overwhelming evidence of the defendant's guilt").  Although Kathy's independent testimony bolstered the Commonwealth's case, her testimony did not corroborate any of the specific details of the alleged abuse against Denise.  Further, the jury acquitted the defendant on two of the charges of abuse against Denise and found the defendant guilty of a lesser included offense on one of the charges involving Kathy -- signaling the evidence was not overwhelming.  See Commonwealth v. Arana, 453 Mass. 214, 228 (2009) ("It is clear that the jury disbelieved a portion of [one complainant's] testimony . . . because they acquitted the defendant on four of the charges that were based primarily on [that complainant's] accusations").
            Given the foregoing considerations, we conclude that the trial judge's limitation of Denise's cross-examination was not harmless beyond a reasonable doubt and therefore the defendant is entitled to a new trial on the charges of abuse against Denise and Kathy.[8]  See Polk, 462 Mass. at 39.
            3.  Conclusion.  We emphasize that our decision in this case turns on the similarities between Denise's allegations against the defendant and her allegations of abuse against the third party that are unique, specific, and striking.  Repetition of facts that are unfortunately likely to occur during most sexual assaults would not be sufficient to overcome the protections of the rape shield statute.  For the reasons discussed, we reverse the judgments on the sexual offense charges involving Kathy or Denise, set aside those verdicts, and remand the case to allow for a new trial on those indictments.[9]

So ordered.
footnotes      

           [1] Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.
            [2] The defendant also argues that the prosecutor made several improper statements during closing argument that independently warrant reversal and a new trial.  Because we conclude the trial judge's error in limiting cross-examination entitles the defendant to a new trial, we do not address this argument.
            [3] Both names are pseudonyms.  We take these pseudonyms from the Appeals Court.  See Commonwealth v. Jacques, 102 Mass. App. Ct. 157, 158 (2023).
            [4] The defendant was also charged with and convicted of evidence tampering and was sentenced to probation.  He does not challenge this judgment on appeal.
            [5] A pseudonym.
            [6] Defense counsel theorized that Denise wanted the defendant removed from the household because he mistreated her siblings.  In support of this theory, defense counsel highlighted Denise's testimony that the defendant once hit Denise's younger sister because she gave his dog a bone, which resulted in her brother getting into a physical fight with the defendant, and that the defendant would put her other sister, then two years old, in a time out.
            [7] We emphasize that our holding is not predicated on any overlapping details common of sexual assaults.  For example, that both the third party and the defendant touched Denise's legs and that Denise had an initially positive view of both men are not uniquely improbable.
            [8] We cannot say the error was harmless even with respect to the charges concerning Kathy.  As with Denise, Kathy's testimony was the only direct evidence of her sexual abuse and thus her credibility was likewise critical.  Although the third-party assault bore more directly on Denise's credibility, it may also have had bearing on Kathy's credibility, given defense counsel's theory that Denise and Kathy conspired together to fabricate their allegations.  Cf. Arana, 453 Mass. at 228 ("testimony . . . specifically connected to [one complainant], may have indirectly bolstered . . . the credibility of [second complainant]" where defendant was accused of sexually assaulting both complainants).
            [9] We affirm the judgment on the conviction of evidence tampering.